# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

MICHAEL ADIB ABDALLAH,

       Petitioner,

v.                            Case No. 3:22-cv-411-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I.    Status

      Petitioner Michael Adib Abdallah, an inmate of the Florida penal system, initiated this action, with help from counsel, by filing a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. <u>See</u> Doc. 1. He is proceeding on an Amended Petition. <u>See</u> Doc. 3. He challenges a state court (Duval County, Florida) judgment of conviction for conspiracy to traffic in controlled substances. He is serving an eighteen-year term of incarceration. Respondents filed a Response. <u>See</u> Doc. 6 (Resp.).[1] And Petitioner filed a Reply. <u>See</u> Doc. 8.

_____

[1] Attached to the Response are various exhibits (Docs. 9-1 to 9-25). The Court refers to the exhibits as "Resp. Ex."

This case is ripe for review.[2]

## II.  <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>,

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is

unaccompanied by an explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that
> does provide a relevant rationale. It should then
> presume that the unexplained decision adopted the
> same reasoning. But the State may rebut the
> presumption by showing that the unexplained
> affirmance relied or most likely did rely on different
> grounds than the lower state court's decision, such as
> alternative grounds for affirmance that were briefed or
> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a

federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could

disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate

review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope</u>

<u>v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the

state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies

results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of

procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine

of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

the procedural default "must result from some objective factor external to the defense that prevented [him] from

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th

Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't</u>

of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.   Factual and Procedural History

The following summary of the trial proceedings is taken from Petitioner's initial brief filed on direct appeal:

> **Sandra Medlin**. Ms. Medlin testified that she is a detective with the Jacksonville Sheriff's Office. Detective Medlin testified that she was part of a wiretap investigation named "Crooked Letter" which was conducted between February and June of 2015. Detective Medlin testified that she and Detective Hanson became involved with the Crooked Letter investigation when Gino Arthur, a suspect they were investigating for cocaine distribution in Duval County, became a target of Crooked Letter. Detective Medlin testified that through the investigation it was determined that Gino Arthur was distributing large amounts of cocaine, transported from Atlanta, Georgia by Leroy Lucas, in Jacksonville. Detective Medlin testified that of all of the members identified by the investigation, only two were from Jacksonville, Gino Arthur and Leroy Lucas. Detective Medlin testified that Willie Davis, Lamar Battle, and Michel Abdallah were identified by the investigation as being part of the alleged drug conspiracy. Detective Medlin testified with the help of a visual aid as follows:
>
> > This is a --what we call our ladder to the Georgia leg of the investigation of Crooked Letter. It started with Gino Arthur and Leroy Lucas who ran cocaine through Duval County. Leroy Lucas worked for Gino Arthur and sold cocaine and took care of the trap houses. We were able to identify Lamar Battles as the individual who would transport cocaine to Jacksonville to Leroy Lucas or Gino Arthur and transport money back to Georgia from the sale of that cocaine.
> >
> > Willie Davis and Gary Alexander were the ones that arranged the purchase and delivery of the cocaine and the return of the money. Willie Davis and Gary

Alexander were basic partners. If Willie Davis would provide the cocaine to be transported to Jacksonville[,] Gary Alexander would get money per kilo for that shipment. If Gary Alexander provided it[,] Willie Davis in turn would get money for that delivery to Jacksonville of the cocaine.

We identified Mr. Abdallah as the supplier to Willie Davis of the cocaine. When Mr. Abdallah was not able to provide the cocaine to be delivered to Jacksonville[,] Gary Alexander would call his supplier who we were not able to identify during the investigation.

Detective Medlin testified that Abdallah lived just outside Atlanta on Falcon Crest.

Detective Medlin testified that for the duration of the investigation[,] Abdallah kept the same phone number. Detective Medlin testified that from the time his number came up in the investigation till the investigation ended was less than 60 days.

**John Hanson**. Mr. Hanson testified that he is a detective with the Jacksonville Sheriff's office. Mr. Hanson stated that he assisted Detective Medlin with the surveillance in Operation Crooked Letter. Detective Hanson testified that he surveilled a house in Duval County with an address of 6663 Vermillion and he observed Lamar Battle, Gino Arthur, and Leroy Lucas at that house, but not Willie Davis or Abdallah. Detective Hanson testified that he never followed Lamar Battle into Jacksonville, but he did follow him to a house in Union City, Georgia. Detective Hanson testified that Abdallah lived at 2608 Falcon Nest Court in Georgia and he surveilled him at that location. Detective Hanson identified Abdallah in the courtroom as the man that resided at 2608 Falcon Nest Court. Detective Hanson identified in a photograph introduced as state's exhibit 6 Lamar Battle, Willie Davis, and Abdallah at the rear of the Yukon while it was parked at Abdallah's house.

**Lamar Battle**. Mr. Battle testified that he is in custody for conspiracy to traffic cocaine and is awaiting sentencing. Mr. Battle testified that prior to being arrested he was living in Edison,

Georgia and previously Fort Gaines, Georgia. Mr. Battle testified that Leroy Lucas lived in Jacksonville, Gino Arthur lived in Jacksonville, Willie Davis lived in Fort Gaines, Georgia, and Abdallah lived in Atlanta. Mr. Battle testified that there were two groups, one in Jacksonville and one in Georgia. Mr. Battle testified that he was the carrier and he would get the cocaine from Abdallah at the direction of Willie Davis in exchange for $750 per kilogram of cocaine. Mr. Battle testified that Abdallah never made any of the trips with him. Mr. Battle testified that he would pick up the money from either Leroy Lucas or Gino Arthur in Jacksonville and then take it to a house in Union City, Georgia owned by Gary Alexander. Mr. Battle testified that they used the house in Union City to count the money. Mr. Battle testified that Willie Davis was the one who coordinated the cocaine purchases. Mr. Battle testified that Willie Davis was getting cocaine from Abdallah or Gary Alexander. Mr. Battle testified that he only picked up cocaine from Abdallah at Abdallah's house. Mr. Battle testified that after picking up the cocaine he would go to the house in Union City to load the Cocaine in the trap and shrink-wrap it. Mr. Battle testified that he never drove directly from Abdallah's house to Jacksonville, he always stopped in Union City, Georgia. Mr. Battle testified that on the day he was arrested he was coming from Edison, Georgia.

Mr. Battle testified that Gino Arthur, Lamar Battle, Gary Alexander and Willie Davis met at the house in Union City in February of 2015. Mr. Battle testified that after repackaging the drugs in Union City he would go to his hometown in Georgia so that Willie Davis could buy some of them. Mr. Battle testified that the agreement to transport drugs from Georgia to Florida was between Gino Arthur, Leroy Lucas, Gary Alexander, Willie Davis, and himself; Abdallah was not part of the agreement. Mr. Battle testified that Abdallah merely sold drugs to him and had no knowledge that the drugs were going to Florida. Mr. Battle testified that Abdallah never paid him anything to transport the drugs.

**Troy Wolfer**. Mr. Wolfer testified that he works for the Florida Department of Law Enforcement as a crime laboratory analyst. Mr. Wolfer identified the substance collected from Lamar Battle upon his arrest was cocaine.

**Willie Davis**. Mr. Davis testified he is in custody for conspiracy to traffic cocaine and is awaiting sentencing. Mr. Davis testified that Gino Arthur, Lamar Battle, Gary Alexander, Leroy Lucas, and himself had a meeting in February of 2015 at which they planned how their organization would send cocaine to Florida. Mr. Davis testified that the five of them agreed to contribute to the rent for the house in Union City. Mr. Davis testified that the participants in the drug operation used code names to obscure their identity, but Mr. Abdallah did not. Mr. Davis testified that Abdallah never went to the house in Union City.

Mr. Davis testified that Mr. Abdallah was one of his suppliers of cocaine. Mr. Davis testified that he would get cocaine from Gary Alexander if he couldn't get cocaine from Abdallah. Mr. Davis testified that Abdallah did not go to Jacksonville. Mr. Davis testified that Abdallah did not know Gino Arthur or Leroy Lucas. Mr. Davis testified that he was "the brains" of the operation. Mr. Davis testified that when Gino Arthur or Leroy Lucas wanted to purchase cocaine[,] they would call him first and if he couldn't get any cocaine they would get it from Gary Alexander. Mr. Davis testified that Abdallah never went to Florida to pick up money. Mr. Davis testified that the money never went straight from Jacksonville to Abdallah, it always went through Union City or Fort Gaines[,] Georgia. Mr. Davis testified that he coordinated where Lamar Battle was driving. Mr. Davis testified that when the cocaine was received from Abdallah it was not properly packaged for transport, it was simply wrapped to separate the kilograms. Mr. Davis testified that the cocaine was never packaged in Abdallah's garage. Mr. Davis testified that Abdallah never rented or bought a car for Mr. Battle to drive to Florida. Mr. Davis testified that he gave cell phones to everybody in the organization including Lamar Battle, Gino Arthur, and Gary Alexander; he never gave Abdallah a phone. Mr. Davis testified that he was not in a conspiracy with Abdallah.

Following Mr. Davis's testimony, the State rested. The defense called no witnesses.

. . . .

13

At the charge conference, Abdallah's counsel asked the Court to modify the standard conspiracy jury instruction to include the following bolded phrase:

> . . . the intent of Michel Adib Abdallah that the offense of trafficking in controlled substances would be committed, **resulting in drugs being brought into the State of Florida**.

The State responded that they would "default to the standard instruction." The court responded as follows:

> I think I'm going to just leave it the way it is. That's the standard instruction. I understand what you – your – the defense is. It's addressed under the trafficking definition, the very next paragraph below that where it says it has – is to be brought into Florida.

Abdallah's counsel responded that the second part of the instruction, which reads as follows:

> The offense of trafficking in cocaine is defined as follows: One, a person knowingly possessed, sold, purchased, manufactured, delivered, or brought into Florida a certain substance.

would not cure the defect because, based on the standard jury instructions alone, Abdallah could be convicted for simply conspiring to possess or sell cocaine in Georgia without any intention of bringing it into Florida.

Resp. Ex. G (record citations omitted).

In its answer brief, the state explained that it accepted Petitioner's statement of the case and facts, subject to the following supplementation and corrections:

> A call between [Petitioner] and Lamar Battle reflects Battle informing [Petitioner] that he had a six-hour drive ahead of him

14

and [Petitioner] said I know. Battle testified that he was referring to the fact that he had to drive all the way to Jacksonville from [Petitioner]'s residence when he made this statement. The prosecutor asked Battle about a call where [Petitioner] referred to ["]these guys.["] The prosecutor asked Battle who ["]these guys["] were and Battle stated they were Gino Arthur and Leroy Lucas. The prosecutor asked Battle if they were the two guys from Jacksonville, Florida and Battle said yes.

The prosecutor asked Willie Davis what [Petitioner] meant, during a call, when he said ["]how many jobs [d]o you think they take[,"] and Davis indicated that "they" referred to Gino Arthur and Leroy Lucas. A call between [Petitioner] and Davis reflects Davis informing [Petitioner] that Battle had a seven-hour drive ahead of him and [Petitioner] stating that he knows.

Resp. Ex. H at 4-5 (record citations omitted).

## IV.   **The Amended Petition**

### A. Ground One

Petitioner alleges that his trial counsel was ineffective for failing to submit to the trial court a written special jury instruction instructing the jury that to find him guilty, it must find Petitioner conspired to bring drugs into Florida. Doc. 3 at 6.

Petitioner raised this issue with the trial court in his Florida Rule of Criminal Procedure 3.850 motion. Resp. Ex. Q at 4. The trial court summarily denied the claim as follows:

In Ground One, Defendant argues that his trial counsel was ineffective for failing to submit a written proposed special jury instruction to the Court prior to the charge conference which, according to Defendant, would have instructed the jury that it must find that Defendant participated in a conspiracy that brought drugs

15

into the State of Florida. Defendant maintains that trial counsel's oral argument was correct but deficiency existed because counsel's failure to submit a written motion for a special jury instruction "led to the trial court's failure to recognize the deficiency in the standard instruction." Defendant posits alternatively that if the trial court had received and rejected a written motion for a special jury instruction, then the trial court's error would have been properly preserved for appeal. Due to the alleged deficiency, Defendant argues he was prejudiced when the jury found him guilty based on the standard jury instruction and when Defendant's conviction was affirmed on appeal.

The State, in its Response, argues that Defendant's trial counsel was not deficient and Defendant was not prejudiced, and that the special jury instruction requested by Defendant's counsel would have been an incorrect statement of the law and misleading to the jury. The Court agrees with the State and this Ground shall be denied.

As an initial matter, "prejudice in counsel's deficient performance is assessed based on its effect on the result at trial, not its effect on appeal." Roderick v. State, 284 So. 3d 1152, 1154 (Fla. 1st DCA 2019) (citing Strobridge v. State, 1 So. 3d 1240, 1241 (Fla. 4th DCA 2009)). The focus of the Court should be on the proceeding "'whose result is being challenged.'" Strobridge, 1 So. 3d at 1242 (quoting Carratelli v. State, 961 So. 2d 312, 322 (Fla. 2007)). Thus, the Court will not consider the last contention that Defendant was prejudiced because his conviction was affirmed on appeal, but shall focus solely on the trial itself and its result.

The Court finds trial counsel was not ineffective under this ground. As stated in the instant Motion, trial counsel made an oral motion to the Court during the charge conference attempting to change the wording of the standard jury instruction. "The standard jury instructions are presumed correct and preferred over special instructions." Stephens v. State, 787 So. 2d 747, 755 (Fla. 2001). The trial court considered both parties' arguments and determined that the standard instruction was sufficient. As the State argues in its Response, such a change in the instruction may have only served to confuse or mislead the jury when it retired for deliberations. Critically, Defendant has not sufficiently demonstrated how the

failure to file a written motion, as compared to the oral motion submitted and argued at the charge conference, constituted deficient performance under the <u>Strickland</u> standard.

Assuming <u>arguendo</u> that trial counsel was deficient, Defendant was not prejudiced. Again, Defendant admits his trial counsel's argument, delivered orally to the Court during the charge conference, was correct. After the charge conference, the Court instructed the jury as to the applicable law and the procedures for its deliberation. Based on the testimony of the witnesses at trial, it was not unreasonable for the jury to have concluded that Defendant was involved in a conspiracy to traffic cocaine from Georgia to Florida along with other co-defendants who were based both in Georgia and in Jacksonville, Florida. Even if the special instruction were granted as Defendant wished, the testimony at trial makes it clear that a criminal conspiracy to traffic drugs existed and that cocaine was actually brought into Jacksonville, Florida, from Georgia, and money was then driven back from Jacksonville to Georgia. Thus, the Court finds there is not a reasonable probability that the outcome of Defendant's trial would have been different had Defendant's trial counsel submitted a written motion for a special jury instruction beyond the oral argument counsel delivered during the charge conference.

Further, Defendant raised the issue of whether the trial court erred in denying the oral motion for a special jury instruction on direct appeal, which was considered by the First DCA; Defendant raised it as the first issue in his Initial Brief. Claims that either were or should have been raised on direct appeal are procedurally barred from being brought for postconviction consideration. <u>See Byrd v. State</u>, 597 So. 2d 252, 254 (Fla. 1992). In his Reply Brief Defendant argued trial counsel properly preserved the special jury instruction for appeal. However, in the instant Motion[,] Defendant has taken the completely opposite position. The Court will not contradict the First DCA's Mandate, nor will it entertain Defendant's flip-flopping argument. Regardless, based on the above reasoning the Court does not find trial counsel ineffective under this ground. Because trial counsel was not deficient, Defendant was not prejudiced, and the issue of the trial court's decision to keep the standard jury instruction and the question of proper preservation of the alleged error was brought and resolved on direct appeal,

Defendant is not entitled to relief under this Ground.

Resp. Ex. S at 3-5 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. W.

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. First, this Court must "defer to the state court's findings regarding procedural" bar. Ferguson v. Sec'y, Dep't of Corr., 580 F.3d 1183, 1193 (11th Cir. 2009) (citing Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)). When "[t]he [state court] [has] 'clearly and expressly' stated that its judgment rested on a procedural bar, and the bar provides an adequate and independent state ground for denying relief," federal habeas relief is precluded. Mills v. Singletary, 161 F.3d 1273, 1284 (11th Cir. 1998). Here, the state court found, inter alia, that this claim was procedurally barred on collateral review because the issue was already considered and rejected on direct appeal. See Arbelaez v. State, 775 So. 2d 909, 919 (Fla. 2000) (holding claim raised and rejected on direct appeal was procedurally barred on collateral review); Raulerson v. State, 420 So. 2d 567, 569 (Fla. 1982) (finding postconviction motion "cannot be used as a substitute for an appeal, and where matters raised therein could have been or were raised on direct appeal, denial of the motion is proper."); see also Dennis v. State, 109 So. 3d 680, 692 (Fla. 2012) (holding that claim of ineffective assistance of

counsel for failing to object to testimony that improperly bolstered other witnesses' testimony was procedurally barred because it was raised on direct appeal as a claim of fundamental error and rejected on the merits). Because the state court found that Petitioner's ineffective assistance claim was barred on an adequate and independent state-law ground, this Ground is due to be denied as procedurally barred.

In any event, even if Petitioner adequately presented this claim of ineffective assistance of counsel to the state court, rejection of this Ground is still appropriate because Petitioner shows neither deficient performance nor prejudice. Petitioner must show that omission of this special instruction so infected the entire trial that his resulting conviction for conspiracy to traffic in controlled substances violated due process. <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977) (citing <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)). The Court does not judge the allegedly erroneous instruction "in artificial isolation," but considers the instruction in the context of the trial record and the jury instructions as a whole. <u>Id.</u> at 152 n.10 (citing <u>Boyd v. United States</u>, 271 U.S. 104, 107 (1926)). Further, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." <u>Id.</u> at 154. Thus, when, as here, the alleged error is an omitted instruction, the burden on Petitioner is "especially heavy." <u>Id.</u>

During the charge conference, trial counsel verbally asked the trial court to include a special instruction indicating Petitioner could only be found guilty if the state proved he participated in a conspiracy to bring drugs into Florida. Resp. Ex. F at 444-45. The trial court declined trial counsel's request and advised that it would follow the standard instruction. Id. at 445. Nevertheless, the trial court recognized that Petitioner's defense at trial was that he did not participate in the conspiracy to traffic because he had no purpose to bring the drugs to Florida, and it advised him that the standard instruction defining "trafficking" specifically addressed Petitioner's defense. Id. at 445; see also id. at 103 ("Trafficking in Cocaine is defined as . . . [a] person knowingly possessed, sold, purchased, manufactured, delivered, or brought into Florida a certain substance."). As the state court explained, considering the totality of the evidence, as well as the jury instructions as a whole, the jury had ample facts to conclude that Petitioner participated in a conspiracy to traffic cocaine into Florida. As such, Petitioner cannot show that but for trial counsel's alleged error, the outcome of his trial would have been different. Thus, upon review, the state court's adjudication of this claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See 28 U.S.C. § 2254(d). Ground One is denied.

**B. Ground Two**

Petitioner argues that his trial counsel was ineffective for failing to file a motion to dismiss the information for lack of jurisdiction. Doc. 3 at 8.

Petitioner raised this issue in his Rule 3.850 motion filed with the trial court. Resp. Ex. Q at 10-14. The trial court summarily denied the claim, finding as follows:

> In Ground Two, Defendant claims his trial counsel was ineffective when they failed to file a pretrial motion to dismiss the amended information for lack of jurisdiction. Defendant contends trial counsel was deficient for failing to file the motion to dismiss and Defendant was prejudiced as the Court may have dismissed the charges against him.
>
> Section 910.005, Florida Statutes, reads in pertinent part:
>
>> (1) A person is subject to prosecution in this state for an offense that she or he commits, while either within or outside the state, by her or his conduct or that of another for which the person is legally accountable, if: (a) The offense is committed wholly or partly within the state; . . . (c) The conduct outside the state constitutes a conspiracy to commit an offense within the state, and an act in furtherance of the conspiracy occurs in the state.
>
> § 910.005(1)(c), Fla. Stat. (2015). The court in <u>Black v. State</u>, 819 So. 2d 208, 211 (Fla. 1st DCA 2002), held the trial court had jurisdiction over that appellant, finding the information alleged substantive offenses and a conspiracy that [] took place partly in Florida. <u>See also</u> <u>Domberg v. State</u>, 518 So. 2d 1360, 1361 (Fla. 1st DCA 1988) (Where that defendant was properly charged and prosecuted in Florida for a "conspiracy which encompassed repeated acts within the state" and that defendant's participation took place outside the State of Florida).

Defendant's argument under this ground fails. Defendant was charged with conspiracy to traffic cocaine into the State of Florida. The law cited above grants criminal jurisdiction to the Florida state courts over a person who is involved in a conspiracy to commit a crime, either wholly or partly within the boundaries of the State of Florida, regardless of the location of that person while the crime is being committed. Here, the trial court had jurisdiction over the co-conspirators, including Defendant, who had worked together to traffic cocaine to Jacksonville, FL, from Georgia, as established by the evidence and testimony presented at trial. The State presented sufficient evidence and testimony to the jury which established that a drug trafficking conspiracy, which involved Defendant, brought cocaine into Jacksonville, Duval County, Florida. Detective Medlin testified to the existence of a drug trafficking ring which moved cocaine from Georgia to Florida and consisted of: Defendant; Mr. Battle; Mr. Davis; Gary Alexander; Gino Arthur[;] and Leroy Lucas. One of Defendant's co-conspirators, Lamar Battle, was arrested in Jacksonville, FL, driving a vehicle containing hidden cocaine. Mr. Battle testified to being involved in a group of people trafficking and dealing cocaine; transporting cocaine down to Jacksonville from Georgia and bringing money back up and delivering the cocaine, supplied by Defendant, to Mr. Arthur and/or Mr. Lucas in Jacksonville. Another co-conspirator, Willie Davis, corroborated Mr. Battle's testimony including Defendant's involvement in the conspiracy and his role as the cocaine supplier.

Based on the record and applicable law, the Court had jurisdiction over Defendant and his co-conspirators. Because a motion to dismiss the amended information for lack of jurisdiction would have failed, trial counsel could not have been deficient for failing to file such a motion and Defendant was not prejudiced by trial counsel's failure to file a meritless motion. Therefore, Defendant is not entitled to relief under this Ground.

Resp. Ex. S at 5-7 (record citations omitted). Petitioner appealed, and the First

DCA per curiam affirmed the trial court's denial without a written opinion.

Resp. Ex. W.

22

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court defers to the state court's finding that the record and applicable law show the state court had jurisdiction over Defendant and his co-conspirators. As such, trial counsel did not act deficiently in failing to file a pretrial motion to dismiss based on this argument. And upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Two is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. 3) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.    If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed

in this case. Such termination shall serve as a denial of the motion.[6]

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of August, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

Jax-7

C:    Michel Adib Abdallah, #J59361
      Counsel of record

---

[6] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.